# United States Court of Appeals
### FOR THE DISTRICT OF COLUMBIA CIRCUIT

Argued April 1, 2024    Decided February 11, 2025

No. 23-7044

UNITED STATES OF AMERICA, EX REL. MARK J. O'CONNOR
AND SARA F. LEIBMAN,
AND
MARK J. O'CONNOR AND SARA F. LEIBMAN,
APPELLANTS

v.

USCC WIRELESS INVESTMENT, INC., ET AL.,
APPELLEES

Appeal from the United States District Court
for the District of Columbia
(No. 1:20-cv-02071)

*Daniel Woofter* argued the cause for appellants. With him on the briefs were *Sara M. Lord* and *Benjamin J. Vernia*.

*Andrew S. Tulumello* argued the cause for appellees. With him on the brief were *Shai Berman*, *Frank R. Volpe*, and *Robert J. Conlan*.

Before: WILKINS, KATSAS and RAO, *Circuit Judges*.

Opinion for the Court filed by *Circuit Judge* RAO.

2

RAO, *Circuit Judge*: This False Claims Act suit alleges that U.S. Cellular and other entities committed fraud in Federal Communications Commission wireless spectrum auctions. The alleged fraud involved using sham small businesses to obtain and retain bidding discounts worth millions of dollars. The district court dismissed the *qui tam* action because a previous lawsuit had raised substantially the same allegations, triggering the Act's public disclosure bar, and the relators bringing the action were not original sources of the information. Although relators have provided some new details about the fraud, they have not overcome the stringent requirements of the public disclosure bar. We therefore affirm.

I.

The False Claims Act ("FCA") imposes liability on persons who defraud the federal government. Act of Mar. 2, 1863, ch. 67, 12 Stat. 696 (codified as amended at 31 U.S.C. § 3729 *et seq.*). While the government has primary responsibility for enforcing the FCA, if the government declines to proceed with a claim, individuals, referred to as relators, may act as "*ad hoc* deputies" to pursue the fraud on behalf of the government in exchange for a share of any recovery. *United States ex rel. Cimino v. IBM Corp.*, 3 F.4th 412, 415 (D.C. Cir. 2021) (cleaned up); *see also* 31 U.S.C. § 3730(b)(2), (b)(4)(B). The bounty for a prevailing relator, which can be up to 30 percent of the proceeds of the action or settlement, provides an incentive for individuals to come forward with allegations of fraud against the government. *See* 31 U.S.C. § 3730(d).

Congress, however, limited the circumstances in which a relator may bring suit and share in the government's recovery. The FCA's public disclosure bar provides that a relator whose

3

allegations are "substantially the same" as information that has already been publicly disclosed cannot maintain a *qui tam* action unless he "is an original source of the information." *Id.* § 3730(e)(4)(A). The public disclosure bar helps protect against the risk that *qui tam* suits will lead to "parasitic exploitation of the public coffers." *United States ex rel. Springfield Terminal Ry. Co. v. Quinn*, 14 F.3d 645, 649 (D.C. Cir. 1994). The bar helps achieve "the golden mean" reflected in the FCA, which provides "adequate incentives for whistle-blowing insiders with genuinely valuable information" but blocks "opportunistic plaintiffs who have no significant information to contribute of their own." *Id.*

A.

This *qui tam* action involves alleged fraud in FCC spectrum auctions. The FCC licenses and administers the wireless spectrum for commercial use and distributes spectrum licenses through public auctions. As relevant here, Congress requires the FCC to promote "disseminati[on] [of] licenses among a wide variety of applicants, including small businesses." 47 U.S.C. § 309(j)(3)(B). To implement this statutory goal, the FCC established a program that provides qualifying small businesses, i.e., designated entities, with bidding credits that effectively discount the cost of their licenses. *Implementation of Section 309(j) of the Communications Act – Competitive Bidding*, Second Report & Order, 9 FCC Rcd. 2348, 2388–91 (1994). Eligibility for bidding credits turns on an entity's revenue. 47 C.F.R. § 1.2110(b), (c), (f).

Given the high barriers to entry in the telecommunications market, the FCC also encourages larger companies to invest in and support designated entities. Large firms may not bid on licenses for designated entities, but they can "become partners

4

with or make investments in designated entities so as to gain an interest in" designated entities' licenses. *Implementation of Section 309(j) of the Communications Act – Competitive Bidding*, Fifth Report & Order, 9 FCC Rcd. 5532, 5547 (1994). Nevertheless, "bidding credits can only be used by genuine small businesses—not by small sham companies that are managed by or affiliated with big businesses." *SNR Wireless Licenseco, LLC v. FCC*, 868 F.3d 1021, 1026 (D.C. Cir. 2017). The FCC scrutinizes designated entities to ensure that large companies are not improperly benefitting from bidding credits by exercising *de facto* control over small businesses. *See* 47 C.F.R. § 1.2110(b)(1), (c)(2)(i), (c)(5).

B.

In this *qui tam* action, the relators maintain the government was defrauded because the FCC awarded millions of dollars in bidding credits to designated entities that in fact were controlled by U.S. Cellular, a large mobile phone service provider with annual revenues in the billions. Relators sued U.S. Cellular, several of its related entities, three designated entities, and Allison DiNardo, the owner of the designated entities.[1] Between 2006 and 2008, DiNardo registered three entities, Carroll, Barat, and King Street, as "very small businesses" in FCC auctions and applied for the corresponding 25 percent bidding credit. According to the complaint, these

---

[1] The *qui tam* action was brought against United States Cellular Corporation, USCC Wireless Investment, Inc., and Telephone and Data Systems, Inc. (together, "U.S. Cellular"); King Street Wireless, L.P., and King Street Wireless, Inc. (together, "King Street"); Carroll Wireless, L.P., and Carroll PCS, Inc. (together, "Carroll"); Barat Wireless, L.P., and Barat Wireless, Inc. (together, "Barat"); and DiNardo. We refer to these entities collectively as "Defendants."

5

designated entities obtained discounted licenses and received nearly $165 million in bidding credits.

In 2008, the law firm Lampert, O'Connor & Johnston, P.C., filed a *qui tam* action alleging that the same defendants here conspired to register sham designated entities to obtain and hold discounted spectrum licenses for U.S. Cellular's use—thereby allowing U.S. Cellular to exploit bidding credits intended for small businesses. According to the law firm, defendants represented that Carroll and Barat were organized to develop and operate spectrum licenses and provide telecommunications services, yet the designated entities engaged in no business activity, had no assets, and generated no revenue. The law firm further alleged that U.S. Cellular controlled the discounted licenses for Carroll and Barat from the moment they were issued but failed to return the bidding credits as required by federal law. At the time the suit was filed, King Street had not obtained its spectrum licenses. The government investigated the allegations against King Street and declined to intervene in the suit. The FCC eventually granted the King Street licenses. The law firm then voluntarily dismissed the *qui tam* action.

This case originated in 2015, when Sara Leibman and Mark O'Connor—the latter of whom was a named partner at Lampert, O'Connor & Johnston, P.C., and represented the firm in the 2008 *qui tam* action—filed a complaint in federal court in Oklahoma, asserting FCA claims against the same defendants as in the 2008 action. In particular, relators alleged Defendants conspired to use sham designated entities to obtain and retain discounted spectrum licenses and made false statements and representations to the government in this effort. The relators further claimed that U.S. Cellular exercised *de facto* control over these entities, disqualifying them from receiving bidding credits, and that King Street unlawfully

6

transferred its licensed spectrum to U.S. Cellular while concealing the transfer from the government.

Relators primarily focused on fraudulent activity involving King Street. They discovered that King Street never provided wireless services to the public. It did not apply for or receive telephone numbers, had no retail stores or customers, and lacked the network capabilities necessary to offer telecommunications services. Instead, according to relators, U.S. Cellular used King Street's licenses to provide U.S. Cellular branded service to customers. King Street, meanwhile, filed false annual reports and construction notices with the FCC to conceal that it was holding its discounted licenses for U.S. Cellular.

Relators also conducted field tests that supposedly revealed U.S. Cellular had incorporated King Street's spectrum into its network. They learned of a network sharing agreement (the "2011 NSA") that, relators say, effectively transferred King Street's spectrum rights for many of its licenses to U.S. Cellular. Relators alleged the agreement established an "attributable material relationship" between King Street and U.S. Cellular, violating FCC rules and disqualifying King Street as a designated entity. The government declined to intervene in relators' suit.

The case was transferred to the District of Columbia,[2] and the district court found relators' complaint asserted

---

[2] Relators filed a second, related action in the Western District of Oklahoma, which was similarly transferred to the District of Columbia. *United States ex rel. O'Connor v. U.S. Cellular Corp.*, No. 20-cv-2070, Dkt. No. 128 (D.D.C. July 30, 2020). We heard oral argument in both cases on the same day. *United States ex rel. O'Connor v. U.S. Cellular Corp.*, No. 23-7041 (D.C. Cir. Apr. 1, 2024).

7

"substantially the same" allegations as the 2008 *qui tam* action. This triggered the FCA's public disclosure bar, and because relators did not meet the criteria for the original source exception, the district court dismissed the action. *United States ex rel. O'Connor v. U.S. Cellular Corp.*, 2023 WL 2598678, at *4–7 (D.D.C. Mar. 22, 2023).

Relators timely appealed, and this court has jurisdiction. 28 U.S.C. § 1291. We review *de novo* a district court's grant of a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6). *United States ex rel. Williams v. Martin-Baker Aircraft Co.*, 389 F.3d 1251, 1259 (D.C. Cir. 2004). When determining whether a complaint fails to state a claim, "we accept the operative complaint's well-pleaded factual allegations as true and draw all reasonable inferences in the [relators'] favor."[3] *North American Butterfly Ass'n v. Wolf*, 977 F.3d 1244, 1249 (D.C. Cir. 2020).

II.

Relators attempt to save their *qui tam* action by arguing that the public disclosure bar does not apply, either because their allegations were not "substantially the same" as those in the 2008 *qui tam* action or because they qualify for the original source exception. We reject both arguments.

---

[3] Although the FCA is an anti-fraud statute and requires relators to meet the heightened "particularity" pleading standard of Federal Rule of Civil Procedure 9(b), *United States ex rel. Totten v. Bombardier Corp.*, 286 F.3d 542, 551–52 (D.C. Cir. 2002), that standard is not at issue in this case because Defendants do not challenge the sufficiency of relators' substantive allegations on appeal.

8

A.

We begin by considering whether relators' allegations are "substantially the same" as those disclosed in the 2008 *qui tam* action and thus trigger the public disclosure bar. The claims here turn on alleged transactions that postdate 2010, and so are governed by the public disclosure bar as amended in 2010, which provides:

> The court shall dismiss an action or claim … unless opposed by the Government, if substantially the same allegations or transactions as alleged in the action or claim were publicly disclosed … [in the enumerated channels], unless … the person bringing the action is an original source of the information.

31 U.S.C. § 3730(e)(4)(A).

The 2010 amendments included two changes relevant to this case. First, the public disclosure bar was previously a jurisdictional limit but is now an affirmative defense. When the bar applies, a court must "dismiss [the] action." *Id.*; *compare* 31 U.S.C. § 3730(e)(4)(A) (1986) (providing that "[n]o court [would] have jurisdiction over an action" for which there had already been a public disclosure). Unless Congress "clearly states" that a statutory limitation is jurisdictional, "courts should treat the restriction as nonjurisdictional." *Arbaugh v. Y&H Corp.*, 546 U.S. 500, 515–16 (2006). In the 2010 amendments, Congress removed the jurisdictional language in the public disclosure bar. *United States ex rel. Shea v. Cellco Partnership*, 863 F.3d 923, 933 (D.C. Cir. 2017). Moreover, the government may oppose a court's dismissal, which reinforces that the bar is no longer jurisdictional. Otherwise, "the government [could] cure a jurisdictional defect simply by opposing a motion to dismiss." *United States ex rel. Osheroff*

9

*v. Humana, Inc.*, 776 F.3d 805, 811 (11th Cir. 2015). The public disclosure bar now operates as an affirmative defense.[4]

Second, Congress clarified the standard for applying the public disclosure bar. Prior to the amendment, the public disclosure bar deprived courts of jurisdiction over actions "*based upon* the public disclosure of allegations or transactions." 31 U.S.C. § 3730(e)(4)(A) (1986) (emphasis added). Interpreting the pre-2010 language, this circuit held that a suit was "*based upon* publicly disclosed allegations or transactions when the allegations in the complaint [were] *substantially similar* to those in the public domain." *United States ex rel. Oliver v. Philip Morris USA Inc.*, 826 F.3d 466, 472 (D.C. Cir. 2016) (cleaned up) (emphasis added). Other circuits used terms such as "substantially similar," "substantially the same," and "substantial identity" when applying the public disclosure bar. *See United States ex rel. Holloway v. Heartland Hospice, Inc.*, 960 F.3d 836, 849–50 & nn.8–9 (6th Cir. 2020) (collecting and discussing cases). In the 2010 amendments, Congress mirrored these judicial formulations, requiring dismissal of a *qui tam* action "if *substantially the same* allegations or transactions … were publicly disclosed." 31 U.S.C. § 3730(e)(4)(A) (emphasis added).

Congress's amendment of the public disclosure bar is best understood as codifying the interpretation of this circuit and others that focused on whether the allegations of fraud in a *qui tam* action were "substantially similar" to or "substantially the same" as publicly disclosed allegations and transactions. *See United States ex rel. May v. Purdue Pharma L.P.*, 737 F.3d

---

[4] We note this is the unanimous view of our sister circuits that have considered the issue. *See, e.g.*, *United States ex rel. Reed v. KeyPoint Gov't Sols.*, 923 F.3d 729, 737 n.1 (10th Cir. 2019) (collecting cases).

10

908, 917 (4th Cir. 2013) ("[T]he amended version [of the public disclosure bar] … focuses on the similarity of the allegations of fraud."); *see also United States ex rel. Reed v. KeyPoint Gov't Sols.*, 923 F.3d 729, 743 (10th Cir. 2019) ("That the substantially-the-same standard adopted in the 2010 amendment resembles the standard we already used is no accident; the amendment expressly incorporates the 'substantially similar' standard in accordance with the interpretation of this circuit and most other circuits.") (cleaned up). Because the FCA amendments incorporate judicial interpretations, we can reasonably continue to rely on our pre-2010 cases applying the public disclosure bar.[5]

B.

Under the "substantially the same" standard, the critical inquiry is whether "the government … ha[d] enough information to investigate the case … or [whether] the information could at least have alerted law-enforcement authorities to the likelihood of wrongdoing." *United States ex*

---

[5] Other circuits have also concluded that "pre-2010-amendment cases guide [the] substantially-the-same inquiry." *Reed*, 923 F.3d at 744; *see also Silbersher v. Valeant Pharms. Int'l, Inc.*, 89 F.4th 1154, 1167 (9th Cir. 2024) ("Congress re-enacted its prior law in clearer terms by replacing 'based upon' with 'substantially the same as,' leaving our precedent interpreting that phrase undisturbed."); *United States ex rel. Silver v. Omnicare, Inc.*, 903 F.3d 78, 83–84 n.6 (3d Cir. 2018); *Bellevue v. Universal Health Servs. of Hartgrove, Inc.*, 867 F.3d 712, 718 (7th Cir. 2017). By contrast, the Sixth Circuit has held that "substantially the same" requires a higher degree of similarity than "based upon." *Holloway*, 960 F.3d at 850–51. We need not resolve whether or how the two standards differ because relators conceded in the proceedings below that our cases interpreting the public disclosure bar before the 2010 amendments remain instructive.

11

*rel. Davis v. District of Columbia*, 679 F.3d 832, 836 (D.C. Cir. 2012) (cleaned up). "[T]he government has enough information to investigate the case" when either "the allegation of fraud" or "its underlying factual elements" have been publicly disclosed. *United States ex rel. Doe v. Staples, Inc.*, 773 F.3d 83, 86 (D.C. Cir. 2014) (cleaned up). The public disclosure bar applies if the fraud was publicly disclosed, or if both the misrepresentation and the truth were in the public domain. *Id.*

Because the public disclosure bar is an affirmative defense and Defendants have raised it in a pre-answer motion under Federal Rule of Civil Procedure 12(b), Defendants must show that "the facts that give rise to the defense are clear from the face of the complaint." *See de Csepel v. Republic of Hungary*, 714 F.3d 591, 608 (D.C. Cir. 2013) (cleaned up). Defendants argue the public disclosure bar applies to this case because the 2008 *qui tam* action publicly disclosed "substantially the same" allegations, namely the same fraudulent scheme (obtaining discounted bidding credits) at the same FCC auctions, perpetrated by the same defendants.

In response, relators claim that their current allegations are not "substantially the same" as the disclosures from 2008, because this suit alleges post-licensing fraud focused on the retention of bidding credits and the incorporation of the designated entities' spectrum into the U.S. Cellular network. Relators also insist they have marshalled new evidence, including an engineering study, employee interviews, and the 2011 NSA, that exposes this fraudulent scheme. Furthermore, relators argue that they have advanced a new allegation that U.S. Cellular's control over King Street's spectrum violates the FCC's attributable material relationship rule, an allegation that is not substantially the same as the pre-licensing fraud

12

involving U.S. Cellular's control over the designated entities during the spectrum auctions.

Relators' complaint includes some additional facts, but ultimately describes a fraud that is merely a continuation of, and therefore substantially the same as, the scheme disclosed in the 2008 *qui tam* action. In the 2008 action, relators alleged that Carroll, Barat, and King Street served as fronts for U.S. Cellular to obtain spectrum licenses at a discount and that the designated entities were under the *de facto* control of U.S. Cellular. In their present complaint, relators reiterate these same allegations, adding only some details about how Defendants have continued the fraud since the spectrum auctions. But the pertinent elements of the fraud were all alleged in the 2008 *qui tam* action: the misrepresentation that Carroll, Barat, and King Street were genuine designated entities; the truth that they were fronts for U.S. Cellular; and the allegation that Defendants committed fraud in the FCC auctions to benefit from valuable bidding credits. The 2008 *qui tam* action alerted the government to the same fraud alleged in this action.

This *qui tam* action simply elaborates on how Defendants attempted to conceal the fraud and maintain its benefits. But "a qui tam action cannot be sustained where both elements of the fraudulent transaction … are already public, even if the relator comes forward with additional evidence incriminating the defendant." *Doe*, 773 F.3d at 86 (cleaned up). Filling in details about an already disclosed fraud is not enough to overcome the public disclosure bar. *United States ex rel. Settlemire v. District of Columbia*, 198 F.3d 913, 919 (D.C. Cir. 1999). We agree with the district court that the 2008 *qui tam* action publicly disclosed that the "same defendants intended to acquire the same discounts at the same auctions via the same scheme of

13

using front companies to fraudulently pose as small businesses." *O'Connor*, 2023 WL 2598678, at *5 (cleaned up).

Although relators offer some additional details about actions Defendants took to preserve their bidding credits and spectrum, the underlying fraud is "substantially the same" as that alleged in the 2008 *qui tam* action. Therefore, the public disclosure bar applies.

III.

Relators also argue they qualify as "original sources" and therefore fit within the exception to the public disclosure bar. Even if relators' claims were previously publicly disclosed, they may bring a *qui tam* action if they were "original source[s]" identifying the alleged fraud. 31 U.S.C. § 3730(e)(4)(A). In the 2010 amendments to the FCA, Congress narrowed the definition of original source. Before the amendments, a relator qualified as an original source by simply possessing "direct and independent knowledge of the information on which the allegations are based." 31 U.S.C. § 3730(e)(4)(B) (1986). The timing of the relator's claim was immaterial. Now, a relator can be an original source only if: (1) "prior to a public disclosure … [he] has voluntarily disclosed to the Government the information on which allegations or transactions in a claim are based"; or (2) he "has knowledge that is independent of and materially adds to the publicly disclosed allegations or transactions, and … has voluntarily provided the information to the Government before filing an action." 31 U.S.C. § 3730(e)(4)(B). Relators here are not original sources under either definition.

Because qualifying as an original source is an exception to the public disclosure bar, relators will generally bear the burden of demonstrating it applies. The original source exception benefits relators by permitting their claims to go forward even

14

if the public disclosure bar is triggered. Relators are also best situated to know the facts relevant to whether they qualify as original sources. *See Smith v. United States*, 568 U.S. 106, 112 (2013) ("Where the facts with regard to an issue lie peculiarly in the knowledge of a party, that party is best situated to bear the burden of proof.") (cleaned up).

A.

Relators maintain that O'Connor is an original source under the first definition because his law firm shared the 2008 *qui tam* action with the government before its public disclosure.

O'Connor cannot be an original source for the 2008 *qui tam* action, however, because that action was filed by his law firm. The 2008 pleadings stated: "Lampert, O'Connor & Johnston, P.C. brings this action … on behalf of itself and the Government." It is a fundamental principle of corporate law that a professional corporation is a legal entity distinct from its shareholders. *See* O'NEAL, THOMPSON & WELLS, 1 CLOSE CORPORATIONS AND LLCS: LAW AND PRACTICE § 2.9 (3d ed. 2024). Although O'Connor was a partner at the law firm and involved in filing the complaint, he cannot attribute the firm's suit to himself. *Cf. United States ex rel. Precision Co. v. Koch Indus., Inc.*, 971 F.2d 548, 554 (10th Cir. 1992) (holding a corporation cannot serve as the original source of information gathered by its shareholders before its formation). The 2008 *qui tam* action was brought by the law firm, and O'Connor cannot step into the firm's shoes to qualify as an original source.

For the first time in their reply brief, relators also claim that O'Connor personally communicated with the government about the allegations of fraud in the 2008 *qui tam* action before its unsealing. This argument, however, has been forfeited because it was not presented in the opening brief. In their opening brief, relators suggested O'Connor was an original

15

source of the 2008 *qui tam* action because he "served" and later "dismissed" the complaint. Defendants naturally responded by focusing on whether the 2008 *qui tam* action, which was filed by O'Connor's law firm and did not mention O'Connor personally, could be attributed to him. Only in their reply brief did relators specifically assert that O'Connor independently communicated with the government about the allegations as early as 2007. This argument comes too late. Relators cannot preserve their claim that O'Connor is an original source by providing a "skeletal" argument in their opening brief and waiting to develop their full argument in reply. *Al-Tamimi v. Adelson*, 916 F.3d 1, 6 (D.C. Cir. 2019) (cleaned up).

O'Connor cannot claim to be an original source based on the disclosures of his law firm, and any argument that he individually provided information to the government has been forfeited. Relators therefore do not qualify as original sources under the first definition of section 3730(e)(4)(B) by voluntarily disclosing allegations of fraud prior to the unsealing of the 2008 *qui tam* action.

B.

Relators also argue that they qualify as original sources under the second definition by having "knowledge that is independent of and materially adds to the publicly disclosed allegations or transactions" and by voluntarily providing that information to the government. 31 U.S.C. § 3730(e)(4)(B). Relators maintain that their independent investigations materially added to the disclosures in the 2008 *qui tam* action by providing information about post-licensing fraud. For example, relators proved through spectrum analyses that after King Street obtained the licenses referenced in the 2008 *qui tam* action, U.S. Cellular secretly incorporated King Street's licensed spectrum, which contradicted King Street's FCC

16

certifications and exposed unlawful activity. Relators also discovered that King Street never operated as a legitimate telecommunications provider. According to relators, their efforts instigated a government investigation that uncovered the 2011 NSA, further demonstrating Defendants' post-licensing fraud. Relators argue they influenced the government's decisionmaking and filled gaps in the government's understanding of the fraud.

Even assuming relators provided some new information that is "independent of" the 2008 *qui tam* action, we must consider whether this information "materially adds" to what was publicly disclosed.[6] *Id.*

This circuit has not previously considered what counts as a material addition for the purpose of the original source exception. We begin with the text and structure of the statute. As the Supreme Court has recognized when interpreting other sections of the FCA, the term "material" has a well-established common law meaning: Something is material if it is likely to influence a reasonable person's behavior. *See Universal Health Servs., Inc. v. United States ex rel. Escobar*, 579 U.S. 176, 193 (2016) (discussing common law definitions of "material" in

---

[6] Whether the original source exception applies because information "materially adds" to public disclosures must be a separate inquiry from whether relators have brought forward allegations that are "substantially the same," which triggers application of the public disclosure bar. While the precise line between these concepts may be difficult to draw, they "must remain conceptually distinct; otherwise, the original source exception would be rendered nugatory." *United States ex rel. Winkelman v. CVS Caremark Corp.*, 827 F.3d 201, 211–12 (1st Cir. 2016); *see also United States ex rel. Maur v. Hage-Korban*, 981 F.3d 516, 525 (6th Cir. 2020) (endorsing *Winkelman*'s reasoning because the alternative "would leave an exception that excepts nothing").

17

tort and contract). Information is material if "knowledge of [it] would affect a person's decision-making" or if it is "significant" or "essential." *Material (adj.)*, BLACK'S LAW DICTIONARY (10th ed. 2014). This definition comports with the liability section of the FCA, which defines "material" as "having a natural tendency to influence, or be capable of influencing, the payment or receipt of money or property."[7] 31 U.S.C. § 3729(b)(4). As the Supreme Court has emphasized, "[t]he materiality standard [in section 3729(b)(4)] is demanding" and is not met "where noncompliance is minor or insubstantial." *Escobar*, 579 U.S. at 194. Interpreting the term "material" consistently across the FCA, we conclude that minor or insubstantial additions to publicly disclosed information will not qualify a relator as an "original source."

A relator therefore "materially adds" to public disclosures by contributing information that "is sufficiently significant or essential" to influence the government's decision to prosecute fraud.[8] *United States ex rel. Winkelman v. CVS Caremark Corp.*, 827 F.3d 201, 211 (1st Cir. 2016); *see also Reed*, 923

---

[7] The Supreme Court has interpreted "material" in other federal statutes in a similar way. *See, e.g.*, *Kungys v. United States*, 485 U.S. 759, 770 (1988) (construing "material" in an immigration statute to mean information that "has a natural tendency to influence, or was capable of influencing, the decision of the decisionmaking body to which it was addressed") (cleaned up); *Neder v. United States*, 527 U.S. 1, 20–25 (1999) (same for federal mail fraud, bank fraud, and wire fraud statutes); *see also id.* at 22 (explaining "the common law could not have conceived of 'fraud' without proof of materiality").

[8] In addition to the cases already cited, this interpretation is consistent with the interpretation of "materially adds" in other circuits. *See, e.g.*, *United States ex rel. Advocates for Basic Legal Equality., Inc. v. U.S. Bank, N.A.*, 816 F.3d 428, 431 (6th Cir. 2016); *United States ex rel. Moore & Co., P.A. v. Majestic Blue Fisheries, LLC*, 812 F.3d 294, 306–07 (3d Cir. 2016).

18

F.3d at 757 (holding that "materially adds" requires relators to "disclose[] new information that is sufficiently significant or important that it would be capable of influencing the behavior of the recipient—i.e., the government") (cleaned up). This interpretation is consistent with the careful balance Congress struck in the FCA to ensure that the government remains "in the driver's seat to pursue and punish false claims according to its priorities." *United States v. Honeywell Int'l Inc.*, 47 F.4th 805, 818 (D.C. Cir. 2022). Reading "material" to require significant or essential additional information also comports with Congress's narrowing of the original source exception in 2010.

Determining whether a relator's contribution materially adds to a public disclosure is a case-dependent inquiry. "[A] relator who merely adds detail or color to previously disclosed elements of an alleged scheme is not materially adding to the public disclosures." *Reed*, 923 F.3d at 757 (cleaned up). Simply elaborating on public disclosures is insufficient to meet the "materially adds" standard because marginal details are not likely to influence the government's decision to prosecute.

Relators do not qualify for the original source exception to the public disclosure bar because their information—which we take as true—does not materially add to the disclosures made in the 2008 *qui tam* action. The 2008 action provided substantial information about U.S. Cellular's alleged control over Carroll, Barat, and King Street. That complaint alleged the designated entities were sham companies under the *de facto* control of U.S. Cellular and existed solely to obtain the 25 percent bidding credit on FCC licenses that were ultimately for U.S. Cellular's use. Relators' allegations in this case merely confirm U.S. Cellular's continued control over the designated entities and its use of their licenses. While some information may be new, it is not so significant or essential that it would

19

influence the government's decision to prosecute, because the 2008 action already disclosed the allegations of Defendants' fraud. Rather than "blaz[ing] a new trail," relators merely "add[ed] a few more breadcrumbs on an existing trail." *Id.* at 763. Providing some additional color about the fraudulent scheme does not make relators an original source.

Relators' contention that they affected the government's decisionmaking by prompting an investigation does not alter our conclusion. Relators say they provided evidence of post-licensing fraud that led the government to conduct a second investigation. This investigation uncovered the 2011 NSA, which relators claim established an attributable material relationship between King Street and U.S. Cellular that violated FCC rules and disqualified King Street from bidding credits. On relators' account, the fact of the government's investigation proves their new information materially added to what the government knew. We disagree.

The government has broad discretion in deciding how to respond to allegations in a *qui tam* suit, and such decisions may be based on a range of factors independent of the relators' specific disclosures. *See Swift v. United States*, 318 F.3d 250, 253 (D.C. Cir. 2003). The FCA requires relators to serve the government a copy of the complaint and all material evidence, which remains sealed for 60 days. *See* 31 U.S.C. § 3730(b)(2). During this seal period, the government may investigate, or take whatever action it sees fit, to determine whether it wants to proceed with an enforcement action or intervene in the *qui tam* suit. *See id.* The fact that the government undertook some due diligence in response to new information does not necessarily show that relators' information was material. The government has significant latitude in how it exercises its enforcement authority under the FCA, and the mere fact of a government investigation cannot support the conclusion that

20

relators' information was essential or influenced the government.

Because relators' allegations failed to materially add to the public disclosures, relators do not qualify for the original source exception to the public disclosure bar.[9]

\* \* \*

This *qui tam* action must be dismissed because the frauds Leibman and O'Connor allege were publicly disclosed in an earlier lawsuit, and they are not original sources of the information. We therefore affirm the judgment of the district court.

*So ordered.*

---

[9] The district court did not abuse its discretion in dismissing with prejudice. Relators did not make a formal motion to amend, and in these circumstances it is not an abuse of discretion for a district court not to grant "such leave *sua sponte*." *Kowal v. MCI Commc'ns Corp.*, 16 F.3d 1271, 1280 (D.C. Cir. 1994).